**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 13 |
| JAMES NANCE | |
| KRISTIN NANCE | Case No. 06-41091 |
| | |
| WILLIAM COOK | |
| CHERYL COOK | Case No. 06-41151 |
| | |
| BYRON HODGE | |
| DORIS HODGE | Case No. 06-40941 |
| | |
| CHRISTOPHER HASTINGS | Case No. 06-41153 |
| | |
| KEITH WILLIAMS | Case No. 06-31832 |

Debtors.

<u>OPINION</u>

In each of the above captioned cases, the Chapter 13 trustee objects to confirmation on the grounds that the proposed plan fails to use the proper methodology to calculate the debtors' projected disposable income and/or fails to provide for payment of all of the debtors' disposable income for a period of five years. This opinion examines 11 U.S.C. § 1325(b) and addresses: (1) how "projected disposable income" is to be calculated for purposes of § 1325(b)(1)(B); and (2) whether, for purposes of confirmation, an above-median income debtor may propose a plan for a duration of less than five years without paying unsecured creditors in full.

The relevant facts of the cases are not in dispute. All of the cases were filed after October 17, 2005 and, therefore, are subject to the provisions of the Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005 (BAPCPA).  Pub. L. No. 109-8.[1]  The debtors in each case have a current monthly income which exceeds the median family income for a household of the same size in the State of Illinois and, further, in each case, the debtors' "monthly disposable income," as calculated on  Official Form B22C, is substantially less than the amount of "monthly net income" as indicated on their Schedules I and J.[2]  None of the debtors have proposed a plan that exceeds 48 months in length, nor have any of the debtors proposed to pay 100% to their unsecured creditors.

All of the debtors  calculate "disposable income" strictly by performing the computations on Form B22C.   They contend that for above-median debtors, Schedules I and J are irrelevant to the calculation.  In four of the five cases, the trustee counters that "projected disposable income" should not be calculated using Form B22C exclusively.[3]  The trustee did not file a supporting brief, but appears to argue that Schedules I and J should be considered as well.

### Calculation of "Projected Disposable Income" Under BAPCPA

Prior to the BAPCPA amendments, § 1325(b)(1) provided:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

---

[1]Unless otherwise noted, all references to the Bankruptcy Code in this opinion are references to the statute as amended by BAPCPA.  References to the Bankruptcy Code prior to BAPCPA becoming effective are cited in this opinion as 11 U.S.C. § (section number)(2004) and/or identified in the text as being either "pre-BAPCPA" or "prior to BAPCPA."

[2]In *Nance*, *Hastings*, and *Williams,* the debtors' Forms B22C indicate that they have *negative* "projected  disposable income" while a review of their Schedules I and J shows net incomes of $1,404.00, $638.00, and $248.74 respectively.

[3]This issue is only before the Court in *Nance, Cook, Hodge,* and *Hastings*.  The trustee in *Williams* did not object to the method used by the debtor to calculate "projected disposable income."  The trustee's objection in *Williams* is limited to whether or not an above-median income debtor can propose a Chapter 13 plan for a duration of less than five years without proposing to pay unsecured creditors in full.

(A)  the value of the property to be distributed under the plan on account of such claim is not less than the amount or such claim; or

(B)  the plan provides that all of debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1) (2004).  The pre-BAPCPA definition of a non-business debtor's disposable income was found in § 1325(b)(2), which defined disposable income as "income received by the debtor and which [was] not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ."  11 U.S.C. § 1325(b)(2) (2004).  To calculate a debtor's "projected disposable income" pre-BAPCPA, the debtor's "reasonable" monthly expenses as reported on Schedule J were subtracted from the debtor's monthly income as reported on Schedule I.

BAPCPA amended §1325(b)(1)(B) to prohibit the court from approving a proposed Chapter 13 plan over a trustee's or an unsecured claim holder's objection unless the proposed plan commits all of a debtor's "projected disposable income to be received in the applicable commitment period" to the payment of unsecured creditors.  11 U.S.C. § 1325(b)(1)(B)(2005).  More significantly, BAPCPA also amended the definition of "disposable income."  Section 1325(b)(2) now provides that for purposes of subsection (b), disposable income "means *current monthly income* received by the debtor less amounts reasonably necessary to be expended. . . ." 11 U.S.C. §1325(b)(2) (emphasis added).  "Current monthly income," in turn, is defined as the debtor's average monthly income received during the six calendar months prior to filing.  11 U.S.C. §101(10A).  The "amounts reasonably necessary to be expended" for above-median debtors are to be calculated in accordance with subparagraphs (A) and (B) of §707(b)(2).  11 U.S.C. § 1325(b)(3).  Pursuant to §707(b)(2)(A)(ii)(I), a debtor is permitted to deduct certain standardized and actual expenses from

-3-

his or her current monthly income.  11 U.S.C. §707(b)(2)(A)(ii)(I) (2005).

To assist a debtor in calculating the required disposable income amount under §1325(b)(2), the Judicial Conference of the United States prescribed Official Form B22C.[4]  This worksheet is intended to provide a standardized methodology for evaluating a debtor's income and expenses.  It is comprised of two basic sections – an income component, which requires a debtor to calculate "current monthly income" based on the average monthly income received in the six month period immediately preceding the filing of the bankruptcy petition, and an expense component, which permits a debtor to deduct certain expenses based on either Internal Revenue standards or the debtor's actual expenses.  Part V of Form B22C instructs a debtor to subtract his or her total amount of expenses and allowed deductions (as referenced on line 57 of Form B22C) from the debtor's current monthly income (as referenced on line 20 and line 53).  Line 58 of Form B22C then identifies this resulting amount as the "monthly disposable income under §1325(b)(2)."

The issue before the Court is how to calculate a debtor's "projected disposable income" under BAPCPA.  While "disposable income" is defined in §1325(b)(2), the definition of "*projected* disposable income" is conspicuously absent.   Specifically, the Court must determine whether a debtor's "projected disposable income" is calculated using the current monthly income figure on line 20 of Official Form B22C, which looks back at the six months preceding the filing, or whether the Court should give forward meaning to the word "projected" and use a debtor's income as reflected on Schedule I to calculate "projected disposable income."

This interpretive conflict has created a significant split of authority among the nation's

---

[4]  Bankruptcy Rule 9009 requires the use of Official Forms.  Bankruptcy Rule 1007(b)(6) requires Chapter 13 debtors to file Official Form B22C.

bankruptcy courts. Three distinct methods of interpretation have emerged. In *In re Fuller,* Judge Pamela Pepper, while sitting by designation in this district, held that "projected disposable income" must be calculated by using the debtor's actual income at the moment of filing as captured on debtor's Schedule I. *In re Fuller*, 346 B.R. 472, 485 (Bankr. S.D. Ill. 2006). In doing so, Judge Pepper agreed with the Northern District of Texas Bankruptcy Court's rationale and holding in *In re Hardacre*. *Id.* at 478, 482; *see In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006). To reach their conclusions, the *Fuller* and *Hardacre* courts offered a three-pronged analysis. First, both courts held that by including "projected" in §1325(b)(1)(B) while omitting the term from the following paragraph that defines "disposable income," §1325(b)(2), Congress must have intended for "projected disposable income" to mean something different than "disposable income." *Fuller*, 346 B.R. at 478; *Hardacre*, 338 B.R. at 723. Second, the courts found the phrase "to be received in the applicable commitment period" instructive, arguing that this language would be purely "superfluous" if Congress had intended for "projected disposable income" to mean only income received pre-petition. *Fuller*, 346 B.R. at 478; *Hardacre*, 338 B.R. at 723.[5] Finally, the courts emphasized that §1325(b)(1)(B) requires a debtor to commit all of his or her projected disposable income "as of the effective date of the plan," thereby suggesting that a debtor's income as of that date is the relevant income amount. *Fuller*, 346 B.R. at 478-479; *Hardacre*, 338 B.R. at 723.

---

[5]*Contra In re Kolb*, 2007 WL 960135, at *10 n.19 (Bankr. S.D. Ohio March 30, 2007) ("The phrase [to be received] simply refers to the payments that will be received throughout the life of the plan. Regardless of how the amount to be paid creditors is determined, general unsecured creditors will receive the funds, not at the time of filing or at confirmation, but in the future. At worst, the phrase could be viewed as figurative, a loose and inartful expression that the current monthly income belongs to or is attributable to the debtor. Even so, the language is insufficiently strong and clear to allow this court to ignore the defined term 'current monthly income' created by BAPCPA in favor of the concept it replaced.")

Both the *Fuller* and *Hardacre* courts were also concerned that a strict interpretation of "projected disposable income"-- i.e. the result of Line 58 on Form B22C-- could lead to impractical results in certain cases.  As the *Hardacre* court explained:

> For example, if 'current monthly income' as defined in section 101(10A) applies, a debtor who anticipates a significant enhancement of future income is provided strong incentive to file chapter 13 as soon as possible.  The amount of money that she would be required to commit to the plan would be based upon her lower average income prior to filing.  On the other hand, a debtor who finds herself in the unfortunate circumstances of having a lower income after filing her petition might find that she is unable to confirm a plan because she cannot devote to the plan a 'projected disposable income' predicated upon her prepetition income.

*Hardacre*, 338 B.R. at 722.  The Bankruptcy Appellate Panel for the First Circuit in *In Re Kibbe* agreed:

> If a debtor's prepetition averaged income was significantly higher than the debtor's income at plan confirmation, statutory indifference to the change at confirmation would doom any chapter 13 plan.  Conversely, if a debtor's pre-petition averaged income was siginficantly lower than his or her income at plan confirmation, the debtor would be granted a windfall.  As a result, unless a debtor's prepetition averaged income was substantially the same as it was at plan confirmation, either creditors would be cheated or, by dint of plan failure, neither the debtor nor the creditors would obtain the benefits that Congress intended for both under chapter 13 of the Bankruptcy Code.

*In re Kibbe*, 361 B.R. 302, 314 (B.A.P. 1st Cir. 2007).

While *Fuller* and *Hardacre* completely ignore a debtor's "current monthly income" (as defined in §101(10A) and referenced on line 20 of Form B22C) in favor of the income amount listed on Schedule I, the United States Bankruptcy Court for the Central District of Utah  in *In re Jass* took a more presumptive approach.  *See In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006).[6]  The *Jass* court, in an effort to both give meaning to the word "projected" and to avoid what it called "absurd"

---

[6] This approach is supported by the United States Trustee in her *amicus curiae* brief to this Court.

results, held that "[t]he Court will presume that the number resulting from Form B22C is the debtor's 'projected disposable income' unless the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *Id.* at 418. *See also In re Edmondson*, 363 B.R. 212, 218 (Bankr. D. N.M. 2007) (adopting the *Jass* presumptive approach over strict adherence to Form B22C in order to avoid absurd results); *In re Slusher*, 359 B.R. 290, 300 (Bankr. D. Nev. 2007) (citing *Jass* in support of its holding that "line 58 of Form B22C is presumptive, but not an exclusive basis for calculating 'projected disposable income'"). Under this presumptive approach, the alleged change of circumstances would be examined at the confirmation hearing. At that time, a debtor would be entitled to present specific evidence that the numbers reflected on Form B22C were inadequate projections of his or her future finances. *Jass*, 340 B.R. at 419. If a debtor successfully rebutted the presumption, he or she would then be allowed to use Schedule I to determine projected disposable income and would not be bound by the figures on Form B22C. *Id.* at 418. Notably, § 1325(b) contains no reference to a presumption and the *Jass* court cites no statutory authority for the creation of a presumption or any standards for rebuttal.

Finally, several other courts have chosen a stricter, more mechanical approach than that adopted by either the *Fuller* or *Jass* courts. The United States Bankruptcy Court for the Eastern District of North Carolina in *In re Alexander* found that §1325(b)'s plain meaning required a simple, mathematical calculation using Form B22C to determine "projected disposable income." *In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006). *See also In re Berger*, 2007 WL 1704403 (Bankr. M.D. Ga. June 11, 2007); *In re Kolb*, 2007 WL 1704403 (Bankr. S. D. Ohio March 30, 2007); *In re Tranmer*, 355 B.R. 234 (Bankr. D. Mont. 2006); *In re Barr*, 341 B.R. 181 (Bankr.

M.D.N.C. 2006); *In re Rotunda*, 349 B.R. 324 (Bankr. N.D. N.Y. 2006); *In re Guzman*, 345 B.R. 640 (Bankr. E.D. Wisc. 2006).   Under this straight-forward approach, "one simply takes the calculation mandated by §1325(b)(2) and does the math." *Alexander*, 344 B.R. at 749.  Thus, under this interpretation,  the income component of "projected disposable income" is a debtor's current monthly income figure as stated on line 20 of Form B22C.   A review of Schedule I is not required.  The *Alexander* court found that §1325(b)(2) "plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law." *Alexander*, 344 B.R. at 747.

Relying on the statute's "plain meaning," *Alexander* and its progeny stress the importance of the location and proximity of Congress' new definition of "disposable income" immediately after the "projected disposable income" provision.  The *Alexander* court stated:

> Both 'projected disposable income' and 'disposable income' fall under subsection (b) of section 1325.  First, (b)(1) states that projected disposable income is to be applied toward unsecured creditors under the plan.  Then, (b)(2) states 'For purposes of this subsection, the term disposable income means....' 11 U.S.C. § 1325(b)(2).  If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose.

*Id.* at 749.

After a thorough analysis of the statute and case law analyzing the three approaches, this Court finds the strict, plain meaning approach adopted by *Alexander* to be the most persuasive on the question of how to calculate "projected disposable income" and, therefore, rejects the approaches suggested by the *Fuller* and *Jass* lines of cases.

In interpreting §§1325(b)(1)(B) and (b)(2), this Court is guided by the Supreme Court's directive in *Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992).  "In interpreting a statute a

court should always turn to one, cardinal canon before all others . . . . . [The] courts must presume

that a legislature says in a statute what it means and means in a statute what it says . . . ." *Id.* at 253-

54.[7]   This Court, like *Alexander*, finds the placement of the definition of "disposable income" in

§1325(b)(2) indicative of Congress' intent that "current monthly income" be used in calculating

"projected disposable income" in §1325(b)(1)(B).  This conclusion is further buttressed by the fact

that Congress made no attempt to define "projected disposable income" anywhere in the statute,

much less within the same subsection.  Had Congress intended for "projected disposable income"

to mean something different than "disposable income," it certainly could have provided a separate

definition of the term.

Those courts finding that "projected disposable income" has a separate meaning from

"disposable income" rely on the interpretive canon that a function or a meaning must be given to

each word in a statute.  *See Kibbe*, 361 B.R. at 313.   However, this reliance is misplaced.  The Court

must only give effect to every word or clause in a statute *if possible*.  *United States v. Menasche*, 348

U.S. 528, 538-39 (1955).   Here, it is not possible to single out one term, "projected," and give it the

kind of independent significance that would alter the definition of "disposable income."  There is

simply no basis for it under BAPCPA.  To do so would unjustifiably elevate the importance of one,

undefined term, therefore "gut[ing] an entire statutory scheme enacted by Congress." *In re Hanks*,

---

[7]When interpreting a statute, the legislative intent is gathered from canons of
construction.  *See* 73 Am. Jur. 2d. Stat. § 62 (2007).  "Bankruptcy is a creature of statute.
Applications of the Bankruptcy Code must, therefore, be construed with long established canons
of statutory construction."  *In re Windsor on the River Associates*, *Ltd.*, 7 F.3d 127, 130 (8th Cir.
1993).

362 B.R. 494, 499 (Bankr. D. Utah 2007).[8]

Furthermore, this Court's interpretation does not render the word "projected" meaningless. Rather the Court finds that "projected" merely explains the treatment of "disposable income." The definition of "projected" is "to plan, figure, or estimate for the future expenditures for the coming year." Webster's Collegiate Dictionary 932 (10th ed. 1996). Thus, under § 1325(b)(1)(B), a debtor's disposable income is calculated, according to the statutory definition, and then projected or extrapolated over the plan's term of years. The Bankruptcy Court for the Southern District of Ohio in *In re Kolb* agrees:

> That the drafters retained the word 'projected' in § 1325(b)(1)(B) makes logical grammatical sense in the context of that particular subsection. It is true that the sentence could be grammatically completed without the word 'projected,' but the word is an acknowledgment that the disposable income that has been calculated to be received by unsecured creditors based on a single month, must be extended or projected over a series of months during the life of a chapter 13 plan.

*Kolb,* 2007 WL 960135, at *10. In this way, the term "projected" is used exactly as it was in pre-BAPCPA §1325(b)(1)(B). The only difference is how the amount that is being projected is calculated under the statute.

In addition, the Court finds no merit in those arguments that have relied on the statute's legislative history in an attempt to discern an overriding Congressional intent. For instance, in adopting the presumptive approach and rejecting the strict approach, the Bankruptcy Appellate Panel

---

[8]The canon of construction "noscitur a sociis" supports the Court's decision. Under this canon, the meaning of an ambiguous word is determined by its context. The Supreme Court has applied this canon to "avoid giving one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995).

for the First Circuit in *In re Kibbe* argued that the strict approach's "rigid adherence to a debtor's pre-petition income history would produce results at odds with congressional purpose" which was to "ensure that debtors repay creditors the maximum they can afford." See *Kibbe*, 361 B.R. at 314 (*citing* H.R. Rep. No. 109-31, pt. 1 at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88).  In support of reliance on legislative history, the *Kibbe* court stated: "Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention, since the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of *persuasive evidence* if it exists.'" *Id.* at 313 (*citing Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48 (1928) (emphasis added)).  This Court finds that no such persuasive evidence exists.  The legislative history regarding the proper calculation of "projected disposable income" is virtually non-existent.  There are no conference or Senate reports regarding this issue and, while there is a House report, it merely paraphrases the language of the statute and is not instructive as to intent. *See* H.R. Rep. No. 109-31; *see also In re Kolb*, 2007 WL 960135, at *4 (disfavoring the use of legislative history to assist in interpreting what Congress meant by "projected disposable income).  "[O]nly the most extraordinary showing of contrary intentions [from legislative history] would justify a limitation on the 'plain-meaning' of the statutory language."  *Garcia v. United States*, 469 U.S. 70, 75 (1984).  Without more, this Court finds that the legislative history regarding §1325(b) is an inappropriate means for determining what Congress meant by the phrase "projected disposable income" and certainly does not support overriding the statute's plain meaning.

Similarly, the Court is not persuaded that the "clear" goal of BAPCPA was to "ensure that debtors repay creditors the maximum they can afford."  *In re Zimmerman*, 2007 WL 295452, at *

8 (Bankr. N.D. Ohio 2007) (*citing* H.R. Rep. No. 109-31).  Congress excluded several sources of income from the disposable income calculation, including repayment of 401(k) loans and Social Security Act benefits, thereby calling into doubt whether maximum repayment to creditors was its main intent.  *See In re Hanks*, 362 B.R. 494, 500 (Bankr. D. Utah 2007) (questioning whether maximum repayment was the goal of BAPCPA).  Further, by focusing on repayment to creditors as Congress' ultimate goal, proponents of this approach ignore other  potential competing goals of Congress under BAPCPA, particularly the desire to eliminate judicial discretion. *Id.*   It is clear from the Chapter 7 means test, the adoption of standardized expense calculations for above-median debtors, and the calculation methods for determining "projected disposable income" that a major goal of Congress was to replace judicial discretion with specific statutory standards and formulas.

Before BAPCPA was passed, the Chapter 13 trustees warned Congress that the amended definition of disposable income in §1325(b)(2) could lead to the kind of impractical results addressed by the *Fuller* and *Hardacre* courts.  *See Alexander*, 344 B.R. at 747 *(citing*  Marianne B. Culhane & Michael M. White, *Catching Can-Pay Debtors: Is The Means Test the Only Way?*, 13 Am. Bankr. Inst. L. Rev. 665, 681 (2005)).[9]  However, these warnings fell on deaf ears.  "[An] alert, followed by the Legislature's nonresponse, should support a presumption of legislative awareness and intention."  *Lamie vs. United States Trustee*, 540 U.S. 526, 541 (2004).  All of these competing interpretations of the legislative history create more confusion than clarity and, therefore, it is impossible to say with assurance which interpretation is most consistent with Congressional intent.

---

[9]In the article, the authors state that "chapter 13 trustees repeatedly made their concerns known to Congress, asking that [current monthly income], less deductions, be a minimum, not the maximum, but no changes were made."  Culhane & White, at 681 *(citing* Email from Henry R. Hildebrand, III, Chapter 13 trustee, to list-serve Bankr-UNLV (May 31, 2005, 08:09:00 CST) (on file with authors)).

Therefore, this Court must rely on the plain meaning of the statute, as it alone best evidences Congressional intent.

This Court acknowledges that its adoption of the strict, mechanical approach may lead to impractical results when a debtor's "disposable income" calculated on Form B22C does not accurately reflect the debtor's actual income. However, the Court does not believe that such impractical results amount to being "absurd," and the Court "will not override the definition and process for calculating disposable income as being absurd simply because it leads to results that are not aligned with the old law." *Alexander*, 344 B.R. at 747. Unintended, impractical results are for Congress to address by amending the statute. "'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think. . . is the preferred result.'" *Lamie*, 540 U.S. at 542, (*quoting U.S. v. Granderson*, 511 U.S. 39, 68 (1994) (concurring opinion)).

Finally, §1329 of the Bankruptcy Code is available to address post-confirmation modifications of the plan due to changes in a debtor's income and/or expenses. Section 1329 provides, in pertinent part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to–
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> * * *
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>
> (2) The plan as modified becomes the plan, unless, after notice and a hearing, such modification is disapproved.

-13-

11 U.S.C. §1329.  This ability to modify the plan, therefore, could be used to eliminate some of the "impractical" results created by a strict interpretation of "projected disposable income."

Based on the foregoing, it is this Court's opinion that Congress "meant what it said" and, therefore, "projected disposable income" should be calculated in strict accordance with Form B22C. Thus, the trustee's objections regarding the calculation of debtors' "projected disposable income" are overruled.  When determining whether or not an above-median debtor has committed all of his or her "projected disposable income" under §1325(b)(1)(B), the Court will look to a debtor's Form B22C alone.

### "Applicable Commitment Period" and Plan Duration

Having concluded that "projected disposable income" is determined by a debtor's Form B22C, the Court must now determine whether, for purposes of confirmation, an above-median income debtor may propose a Chapter 13 plan for a duration of less than five years, even if the plan does not propose to pay unsecured creditors in full.

In each of these cases, the debtors have above-median income as defined by 11 U.S.C. §707(b)(2)(A).   In three cases, *Williams*, *Nance*, and *Hastings*, Forms B22C indicate that the debtors have negative monthly disposable income.  In the remaining cases, *Hodge* and *Cook,* the debtors have monthly disposable income of $379.42 and $500.29 respectively.  None of the debtors are proposing to pay their unsecured creditors in full.  However, all of these debtors have proposed Chapter 13 plans which have a duration of less than five years.  The trustees object to confirmation on the grounds that §§1325(b)(1)(B) and (b)(4) now require above-median income debtors to propose plans with a duration of not less than five years unless unsecured creditors are paid in full.

-14-

Prior to the enactment of BAPCPA, upon objection by the trustee or an unsecured creditor, a plan could not be confirmed unless it either distributed property having a value of not less than the full amount of the unsecured claims under §1325(b)(1)(A), or it provided that all of the debtor's disposable income received in the three year period after filing would be paid into the plan. This test, known as the "best efforts test," required that debtors who were not proposing to pay unsecured creditors in full, make their best effort toward payment for a period of three years. 11 U.S.C. §1325(b)(1)(B) (2004). However, BAPCPA made a substantial change to §1325(b)(1). The reference to a three year payment period was eliminated and replaced with the phrase "applicable commitment period." Section 1325(b)(1) now provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> > (A) the value of the property distributed under the plan on account of the claim is not less than the amount of such claim; or
> >
> > (B) the plan provides that *all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.*

11 U.S.C. §1325(b)(1) (emphasis added). Section 1325(b)(4) then specifies what the various commitment periods are. Pursuant to §1325(b)(4)(A)(ii), the "applicable commitment period" for above-median income debtors, such as the debtors in these cases, is five years unless the plan proposes to pay all allowed unsecured claims in full in a shorter period of time. 11 U.S.C. §1325(b)(4)(A)(ii).[10]

---

[10]Section 1325(b)(4) states that the applicable commitment period:

The debtors assert that the introduction of an "applicable commitment period" does not require them to make plan payments for a specific period of time. Rather, they maintain that the "applicable commitment  period" is merely the multiplier to be used in calculating the amount of disposable income that must be paid to unsecured creditors. Proponents of this "monetary approach" suggest that the language of § 1325(b)(1)(B) regarding an applicable commitment period simply relates to the projection and calculation of a fixed sum, which is based on a debtor's disposable income multiplied by the length of the "applicable commitment period" for that debtor. Under this interpretation, this sum may then be paid off in less than 36 months for  below-median income

---

(A) subject to subparagraph (B), shall be—

    (i)  3 years; or

    (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than–

        (I)    in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

        (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

        (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), *but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*

11 U.S.C. §1325(b)(4) (emphasis added).

-16-

debtors or in less than 60 months for above-median income debtors without violating §1325(b)(4)(B).   *See In re Swan*, 2007 WL 1146485 (Bankr. N.D. Cal., April 18, 2007); *In re Brady*, 361 B.R. 765 (Bankr. D.N.J. 2007);  *In re Fulger*, 347 B.R. 94 (Bankr. D. Utah 2006).

This Court, like the  majority of courts which have addressed this issue, declines  to adopt the monetary interpretation. While the "applicable commitment period" certainly does function as a multiplicand for calculating the amount to be paid to unsecured creditors, the plain language of §§1325(b)(1)(B) and (b)(4) indicate that the "applicable commitment period" is also a  temporal concept which mandates that above-median income debtors submit their projected disposable income into the plan for a period of five years.  *In re Luton*, 363 B.R. 96 (Bankr. W.D. Ark. 2007); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006); *In re Cushman,* 350 B.R. 207 (Bankr. D.S.C. 2006);  *In re Davis,* 348 B.R. 449 (Bankr. E.D. Mich. 2006).

By its everyday, accepted meaning, the word "period" connotes a measurement of time. "Period" is defined as "a portion of time." Webster's Collegiate Dictionary 864 (10th ed. 1996). Similarly, the word "commitment" is defined by Webster's Dictionary as "an agreement or pledge to do something in the future" and also as "the state or an instance of being obligated." *Id*. at 231. These  terms, on their face, suggest an obligation to do something over time.  As the court reasoned in *In re Slusher*:

> [T]he essence of a chapter 13 case is that the debtor has made an ongoing *commitment* to provide all disposable income over a period of time to repay creditors. The use of the word 'commitment' within 'applicable commitment period' exemplifies this congressional goal, implying that the debtor has an ongoing obligation.  With an ongoing obligation by the debtor to remain in bankruptcy for the plan term, interested parties can monitor the debtor and capture any increases in the debtor's income during that time.

*Slusher*, 359 B.R. at 304.

The temporal interpretation is strongly supported by the legislative history of §1325 as well. The House Report on BAPCPA states:

### § 318.  Chapter 13 Plans to Have a 5-Year Duration in Certain Cases.

> Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that *a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds.*  If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period up to five years. *The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*  Section 318(2), (3), and (4) make conforming amendments to sections 1325(b) and 1329(c) of the Bankruptcy Code.

H.R. Rep. No. 109-31, pt. I (2005), *as reprinted in* 2005 U.S.C.C.A.N.  p. 88, 146 (emphasis added). The title of this section of the House Report indicates that the amendments to § 1325(b) were intended to address the length of Chapter 13 plans – not merely to create a multiplier to be used for determining the amount of plan payments.

This approach is also consistent with pre-BAPCPA practice.  Admittedly, because of the extent of the BAPCPA revisions, interpretations based on the Code as it "used to be" may be of little utility.   However, there is simply no indication in §1325(b)(1) that Congress intended to abandon a temporal framework for repayment of unsecured creditors. *Schanuth*, 342 B.R. at 608;  *In re McGuire,* 342 B.R. 608, 615 (Bankr. W.D. Mo. 2006).  *See also Cohn v. de la Cruz*, 523 U.S. 213, 221, 118 S.Ct. 1212, 140 L.Ed. 2d 341 (1998) ("We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.").  Under the prior version of § 1325(b)(1), a debtor generally could not exit bankruptcy prior to the expiration

-18-

of 36 months. 11 U.S.C. § 1325(b)(1)(B) (2004).  The revisions to this section appear to have merely substituted an "applicable commitment period" for the previously required three-year "best efforts" period.  This is evidenced in  the express language of § 1325(b)(4)(B), which clearly states that a debtor may propose a plan that is less than three or five years, whichever is applicable, *only* if unsecured creditors are paid in full.  Like the "best efforts" requirement under prior law, §1325(b)(4)(B) imposes a minimum plan duration, unless full repayment is made to unsecured creditors in a shorter time.   Obviously,  BAPCPA has precipitated many changes in Chapter 13 practice.  However, this Court does not believe that the elimination of a minimum plan length in cases where a debtor is not proposing to pay 100% to their unsecured creditors is one of those changes.

Finally, Congress employed  multipliers throughout BAPCPA to be used in making various calculations.  In those instances, Congress specifically used the word "multiply."  For example, §707(b)(2)(A)(i), which sets forth the computation for the "means test,"  requires current monthly income to be "reduced by the amounts determined under clauses (ii), (iii) and (iv), and *multiplied* by 60."  11 U.S.C. §707(b)(2)(A)(i) (emphasis added).   Likewise, to discern whether a debtor's reasonably necessary expenses are determined by §§707(b)(2)(A) and (B), § 1325(b)(3) directs that monthly income be "*multiplied* by 12."   11 U.S.C. §1325(b)(3) (emphasis added).  Section 1325(b)(1)(B) contains no reference to the word "multiply."   Rather, it employs language which requires a debtor to do something over a period of time. "If Congress intended §1325(b)(1)(B) to simply consist of the computation of the amount of a monetary obligation based upon a multiplication task, there are more plain and direct terms that could have been used, and that were used in other portions of BAPCPA."  *Davis*, 348 B.R. at 456.

The debtors in *Williams, Nance*, and *Hastings* assert that even under a temporal interpretation, the duration of their plans is irrelevant because their Forms B22C indicate that they have no disposable income for payment to unsecured creditors. These debtors rely on the reasoning of *Alexander*, where the court held that because the term "applicable commitment period" is only relevant with regard to the payment of disposable income to unsecured creditors and not to other categories of plan payments, it simply did not apply where a debtor had no projected disposable income. *In re Alexander*, 344 B.R. at 751. *See also In re Kagenveama*, 2006 LEXIS 2759, 2768 (Dist. Ariz. July 10, 2006); *In re Lawson*, 361 B.R. 215, 220 (Bankr. D. Utah 2007) (the applicable commitment period is "fundamentally irrelevant" where disposable monthly income is less than zero). The *Alexander* court concluded that there was no reason to artificially extend a plan for five years if a debtor was under no obligation to pay a dividend to unsecured creditors. This approach, however, is inconsistent with the plain language of §§1325(b)(1) and (b)(4). The definition of "applicable commitment period" is found in §1325(b)(4), where it is linked exclusively to the amount of a debtor's current monthly income. The definition does not make an exception for above-median income debtors who have no projected disposable income and, in fact, never references disposable income at all. This conclusion is buttressed further by the legislative history which also refers *only* to the debtor's current monthly income. H.R. Rep. No. 109-31, pt. I (2005), *as reprinted in* 2005 U.S.C.C.A.N. p. 88, 146 ("a plan may not be less than five years if the *current monthly income* of the debtor and the debtor's spouse combined exceeds certain monetary thresholds") (emphasis added).

Moreover, as noted by the trustee in *Williams*, § 521(f) of the Code imposes certain reporting requirements upon debtors regarding their income and expenses. Debtors are now required, upon

-20-

request by the Court, the United States trustee, or any party in interest, to file annual copies of their federal income tax returns as well as annual statements of income and expenditures with the Court. 11 U.S.C. § 521(f).  The purpose of this section, ostensibly, is to allow interested parties to monitor a debtor's financial situation during the pendency of the bankruptcy case and to seek modification of the plan pursuant to § 1329 if changes in that situation occur.  Permitting certain debtors to exit bankruptcy immediately upon payment of their secured creditors would essentially render these reporting requirements meaningless.

On a practical level, there is some merit to the debtors' argument.  Certainly, priority and secured creditors would prefer to be paid sooner rather than later and, a debtor may have a greater likelihood of successfully completing their plan if permitted to exit bankruptcy in a shorter period of time.  However, as one court explained, anomalies such as this are

> [t]he unfortunate result of a congressionally-created system that uses rigid formulas to calculate a debtor's chapter 13 plan payments rather than considering a debtor's present financial reality and ability to pay.  Nonetheless . . .  it is not the court's function to legislate, but to interpret and apply the law as written.

*In re Kolb*, 2007 WL 960135 at *13 (Bankr. S.D. Ohio 2007).    The unequivocal language of §1325(b)(4)(B) states that the commitment period for an above-median income debtor may be less

than five years *only* if the plan pays all unsecured creditors in full over a shorter period of time. Where a statute's language is clear, the Court must enforce it according to its terms.  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).  Here, the Court finds that the plain language of § 1325(b) mandates that, in order to be confirmed, an above-median income Chapter 13 debtor must propose a five year plan, unless the plan pays

unsecured creditors in full over a shorter period of time.

## Conclusion

This Court concludes that "projected disposable income" for above-median income debtors shall be determined solely by Form B22C. The Court further concludes that above-median income debtors must commit that income to their Chapter 13 plan for a period of five years, unless they propose to pay unsecured creditors in full over a shorter period. Accordingly, the objections in these cases are sustained in part and overruled in part. The debtors have calculated their "projected disposable income" in a manner consistent with this Opinion, and, therefore, the trustee's objections with regard to that issue are overruled. However, because all of these debtors have above-median income but have proposed plans of less than five years, the trustees' objections regarding plan duration are sustained and the debtors must file amended plans which either extend the plan duration to five years or which propose to pay unsecured creditors in full.

SEE WRITTEN ORDER.

ENTERED: July 10, 2007

          /s/ Kenneth J. Meyers          

UNITED STATES BANKRUPTCY JUDGE
